UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROLYN PURDY,                                    Case No. 15-10949

                Plaintiff,                    Linda V. Parker
v.                                                United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                  Stephanie Dawkins Davis
                                                  United States Magistrate Judge
                Defendant.
_____/

**REPORT AND RECOMMENDATION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 15, 16)**

# I.   PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On March 12, 2015, plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(A)-(C) and Local Rule 72.1(b)(3), District Judge Linda V. Parker referred this matter to Magistrate Judge Michael Hluchaniuk for the purpose of reviewing the Commissioner's decision denying plaintiff's claims. (Dkt. 4). On January 5, 2016, the case was reassigned by Text-Only Order to the undersigned pursuant to Administrative Order. (*See* Text-Only Order entered January 5, 2016). On July 16, 2015, plaintiff filed her motion for summary judgment. (Dkt. 15). On August 17, 2015, the Commissioner filed its motion for

summary judgment (Dkt. 16), and on August 24, 2015 plaintiff replied (Dkt. 17).

The matter is now ready for report and recommendation.

  B. <u>Administrative Proceedings</u>

  Plaintiff protectively filed a Title II application for a period of disability and

disability insurance benefits on April 3, 2012.  The same day, plaintiff filed a Title

XVI application for supplemental security income.  In both applications, plaintiff

alleged a disability beginning April 3, 2012.  (Dkt. 11-5, Pg ID 206-213).  The

Commissioner initially denied plaintiff's applications on June 8, 2012.  (Dkt. 11-4,

Pg ID 131-139).  Thereafter, plaintiff requested an administrative hearing, and on

October 17, 2013, she appeared with counsel before Administrative Law Judge

("ALJ") Ryan Johannes, who considered her case *de novo*.  (Dkt. 11-2, Pg ID 73-

102).  In an October 20, 2013 decision, the ALJ determined that plaintiff was not

disabled within the meaning of the Social Security Act.  (Dkt. 11-2, Pg ID 57-67).

Plaintiff requested a review of this decision, and the ALJ's decision became the

final decision of the Commissioner when, after the review of additional exhibits,[1]

---

   [1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

the Appeals Council on January 21, 2015, denied plaintiff's request for review.

(Dkt. 11-2, Pg ID 40-45); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44

(6th Cir. 2004).  Plaintiff filed this suit on March 12, 2015.  (Dkt. 1).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's

motion for summary judgment be **DENIED**, that the findings of the Commissioner

be **REVERSED**, and this matter be **REMANDED** for further proceedings

consistent with this Report and Recommendation under Sentence Four.

## II.    FACTUAL BACKGROUND

Plaintiff's claim for disability is based on her claims of depression, anxiety

and hypertension. (Dkt. 11-2 Pg ID 62).  At the time of her initial hearing, she was

47 years.  She had previously worked as an assembler at factories.  However, she

quit her most recent job because of her anxiety and emotional disturbance.  (Dkt.

11-2 Pg ID 63, 80-82).

### A.    ALJ Findings

The ALJ applied the five-step disability analysis to plaintiff's claims and

found at step one that plaintiff did not engage in any substantial gainful activity

since April 3, 2012, the alleged onset date.  (Dkt. 11-2, Pg ID 59).  At step two,

the ALJ found that plaintiff had the following severe impairments:  major

depressive disorder, anxiety disorder, and a personality disorder.  (*Id.*)  At step

three, the ALJ found that plaintiff did not have an impairment or combination of

impairments that met or equaled one of the listings in the regulations.  (*Id*. at 60).

The ALJ determined that plaintiff had the residual functional capacity

("RFC") to perform:

> a full range of work at all exertional levels but with the
> following nonexertional limitations: she can understand,
> remember, and carry out simple repetitive tasks and
> make simple work-related decisions; can relate to others
> on a superficial basis with no work requiring interaction
> with the general public and only occasional interaction
> with coworkers or supervisors; and work should not be
> fast paced or have strict time or quota demands and in a
> routine work setting with only occasionally changes in
> the work routine.

(Dkt. 11-2, Pg ID at 62).  At step four, the ALJ determined that plaintiff was not

capable of performing any past relevant work.  (Dkt 11-2, Pg ID 65).  At step five,

the ALJ concluded that based on plaintiff's age, education, work experience and

RFC, there are jobs that exist in significant numbers in the national economy that

plaintiff can perform, and that plaintiff has not been under a disability from April

3, 2012, through the date of the decision.  (Dkt. 11-2, Pg ID 65-66).

    B.    <u>Plaintiff's Claims of Error</u>

Plaintiff's primary argument is that the ALJ erred in giving little weight to

her treating psychiatrist, Dr. Leon Quinn.  (Dkt. 15, Pg ID 462-465).  Plaintiff says

that the ALJ failed to show why Dr. Quinn's opinion was not entitled to

4

controlling weight. Here, the ALJ discredited Dr. Quinn's opinion because "it [was] not supported by the claimant's medical record as a whole and is contradicted by Dr. Quinn's own findings and records." (Dkt. 11-2, Pg ID 64). However, plaintiff argues that Dr. Quinn was the only psychiatrist to consistently treat plaintiff and the only other medical opinion in the record (state agency examiner Thomas Horner, Ph.D.), was consistent with Dr. Quinn's opinion. Both physicians assigned plaintiff a GAF score within two points of one another: 54 versus 56. Also, Dr. Horner's opinion (to which the ALJ assigned significant weight) concluded that plaintiff had many of the same limitations as determined by Dr. Quinn. (Dkt. 11-7, Pg ID 371). Further, plaintiff argues that contrary to the ALJ's conclusion, Dr. Quinn never made a finding that she met Listing 12.04 (a determination reserved for the Commissioner), rather he only opined that plaintiff exhibited symptoms such as such as anhedonia, appetite disturbance with weight change, sleep disturbance, psychomotor retardation, decreased energy and feelings of guilt or worthlessness. (Dkt. 11-7, Pg ID 392). Plaintiff argues that Dr. Quinn's statements are medical conclusions, not legal conclusions. Finally, plaintiff argues that the ALJ impermissibly discounted Dr. Quinn's opinion concluding that plaintiff could not live outside of a "highly supportive living situation." (Dkt. 11-2, Pg ID 64; Dkt. 11-7, Pg ID 396). According to plaintiff, under Listing 12.00(F), such "highly supportive living" environments are ones that

"greatly reduce the mental demands" placed on the claimant, and can include the

claimant's home.  Given that Dr. Quinn stated that plaintiff's "anxiety prevents her

from leaving home often" and that plaintiff lives with her mother, plaintiff says

that it is not implausible to define her living arrangement as "highly supportive"

under 12.00(F).  (Dkt. 11-2, Pg ID 78; Dkt. 11-7, Pg ID 394).

Plaintiff also argues that the ALJ committed reversible error when he based

his opinion almost entirely on the opinion of state consulting examiner, Dr.

Thomas Horner, who actually determined that plaintiff was not capable of

functioning in the workplace.  (Dkt. 15, Pg ID 465-467).  According to plaintiff,

the ALJ used the opinion of Dr. Horner as the foundation for discrediting

plaintiff's treating psychiatrist and ultimately finding plaintiff not disabled.

However, after evaluating plaintiff, Dr. Horner opined:

> Plaintiff's ability to relate positively, reciprocally, and
> effectively with others … is essentially intact from the
> standpoint of a simple social skill, but impaired by her
> constant depression and proclivity to break into tears
> when employed. She brings a positive set of interactive
> and communication ability to work situations – it's just
> that currently she is so beset by low self-esteem and
> strong currents of guilt, shame, and embarrassment that
> she cannot function well or easily with others. Her ability
> to understand, remember and carry out familiar or
> customary tasks is essentially intact. However, her ability
> to focus and sustain attention to relevant and customary
> occupational tasks is interfered with significantly by her
> depressive dynamics. *Plaintiff's ability to withstand or
> otherwise cope with the stresses of ordinary or*

> *customary occupational activity is therefore impaired at*
> *this time, and likely to remain so indefinitely.*

(Dkt. 11-7, Pg ID 371) (emphasis added).  Plaintiff contends that because Dr.

Horner indicated that her symptoms are so severe that she is unable to cope with

the stress of ordinary or customary occupational activity now and indefinitely, his

opinion cannot provide the basis for determining that she can function in a normal

work environment.  As a result, the ALJ's decision is without evidentiary support

and is not based on substantial evidence.  Plaintiff says that it would also be

improper to base the ALJ's decision on the opinion of the non-examining state

agency consultant, Ruqiya Tareen, M.D.  (Dkt. 11-3, Pg ID 109).  Dr. Tareen

rendered her opinion without having examined plaintiff and also did not have the

benefit of reviewing the medical records from Dr. Quinn.  (*Id*. at 105-107).  Under

these circumstances, Dr. Tareen's opinion cannot support the ALJ's decision in

this case.

Plaintiff asks this court to remand for the entry of an award.  That relief is

appropriate where "the decision is clearly erroneous, proof of disability is

overwhelming, or proof of disability is strong and evidence to the contrary is

lacking." *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

Importantly, both of the acceptable medical sources that personally examined

plaintiff (Drs. Quinn and Horner) opined that she was disabled.  And, according to

plaintiff, given the magnitude of the error, this matter should be remanded for entry of an award, not for further proceedings.

C.   The Commissioner's Motion for Summary Judgment

The Commissioner first argues that plaintiff does not challenge the adequacy of the vocational evidence at step five, other than challenging the RFC finding as presented in the hypothetical questioning of the vocational expert. (Dkt. 16, Pg ID 483-484).

Next, the Commissioner argues that plaintiff's mental work capacity is consistent with the medical opinions in the record.   The Commissioner says that the ALJ took into account the opinion of reviewing psychiatrist, Dr. Tareen, and consultative examiner, Dr. Horner.  The ALJ noted that plaintiff's GAF scores consistently showed no more than a mild to moderate degree of functional limitation due to mental impairments.  (Dkt. 11-2, Pg ID 63-64; Dkt. 11-7, Pg ID 317, 339, 371, 380, 391, 414, 415).  The Commissioner indicates that the ALJ rightly relied on Dr. Tareen's opinion insofar as it was consistent with the totality of the medical evidence in the record. *Ealy v. Commissioner of Social Security*, 594 F.3d 504, 514-515 (6th Cir. 2010).  The Commissioner says that the ALJ rightly discounted Dr. Quinn's opinion that plaintiff could not do any work due to her mental limitations because first, Dr. Quinn never assigned plaintiff a GAF score lower than 53, suggesting at most moderate (or even mild) functional

limitations, and also because Dr. Quinn made no accompanying observations suggesting that plaintiff displayed symptoms that could render her unable to function. (Dkt. 11-7, Pg ID 389, 414-415, 418, 420). The Commissioner also indicates that therapist notes from the same period also do not document an inability to function. (*Id*. at 427-448). The Commissioner argues that the ALJ may properly discount a psychiatrist's opinion on a plaintiff's functional limitations where, as here, such an opinion is inconsistent with GAF scores in the record. *Curler v. Comm'r of Soc. Sec.*, No. 13-1721, 561 Fed. Appx. 464, 472 (6th Cir. 2014); *Gribbins v. Comm'r Soc. Sec.*, No. 01-5752, 37 Fed. Appx. 777, 779 (6th Cir. 2002).

In addition, the Commissioner argues that Dr. Horner's opinion, upon which the ALJ relied, supports a claim that plaintiff is not limited beyond what the ALJ determined. First, Dr. Horner assigned plaintiff a GAF score of "56" which indicates no more than a moderate degree of mental functional impairment. (Dkt. 11-7, Pg ID 371). The Commissioner notes that while plaintiff exhibited "sad mood" this did not interfere with Dr. Horner's ability to interview her. In addition, Dr. Tareen, who reviewed Dr. Horner's report, along with other evidence available to him, did not rule out plaintiff's ability to do simple work. (Dkt. 11-3, Pg ID 112-113). The Commissioner also notes that the ALJ placed additional limitations on plaintiff's work capacity beyond those suggested by Dr. Tareen,

9

such as no more than superficial contact with others, low work stresses (in terms of pacing) and only occasional changes in the work routine. (Dkt. 11-2, Pg ID 62). For these reasons, the Commissioner submits that the ALJ's decision that plaintiff is not disabled is supported by substantial evidence.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters*, 127 F.3d at 528. In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc.*

12

*Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

     B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of

> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where

15

substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis</u>

        1.    *Treating Physician Rule*

Plaintiff first challenges the "little" weight the ALJ gave to her treating psychiatrist Dr. Leon Quinn's opinions and conclusions. (Dkt. 11-2, Pg ID 63-64). The ALJ's full analysis of Dr. Quinn's opinions is reproduced here:

> Although many of the treatment records from Catholic Social Services are illegible, the records that can be read indicate that she was primarily being treated for a depressive disorder. (Ex. 12F). In July 2013, Dr. Quinn provided several opinions as to the claimant's mental functioning. In one opinion, he provided limitations that would qualify the claimant to meet listing 12.04 such as having marked limitations regarding restrictions of activities of daily living; extreme difficulties in maintaining social functioning; and marked difficulties in maintaining concentration, persistence, or pace; and three extended episodes of decompensation. He added that the claimant also requires a highly supportive living arrangement. (Ex. 10F). In another opinion he stated that the claimant's impairments cause her such severe limitations that she is unable to meet competitive work standards. (Ex. 8F/4). Dr. Quinn also provided a letter he gave to the court system to have the claimant excused from jury duty. In the letter, Dr. Quinn stated that, because of the claimant's disabling psychiatric symptoms, "[she] feels unable to respond to the request to serve on a jury." He continued, "Her anxiety prevents her from leaving her home often, she feels unable to focus or concentrate for any extended period of time and her depressive symptoms contribute to her having no energy or motivation." (Ex. 9F/1). The undersigned has given little weight to these opinions and conclusions as they are not supported by the

claimant's medical record as a whole and are contradicted by Dr. Quinn's own findings and records. For example, despite claiming that the claimant meets a disability listing, he also stated that she has a GAF score of 54, which indicates that the claimant's functioning is only moderately impaired. (Ex. 8F/2). Additionally, Dr. Quinn's conclusion that the claimant meets a listing is also given little weight since it is a determination left to the Commissioner and cannot be abdicated. Furthermore, there is no indication in the record that the claimant requires a highly supportive living arrangement as Dr. Quinn has suggested.

(Dkt. 11-2, Pg ID 63-64).

An ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign to that opinion in light of several factors: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich.

17

Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 Fed. Appx. 216, 222 (6th Cir. 2010)).  An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation."  *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)).  The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight.  *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court

18

has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

The undesigned finds that the ALJ did not offer sufficient reasons for discounting Dr. Quinn's opinions.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). First, the ALJ indicates that he gave "little" weight to Dr. Quinn's "opinions and conclusions as they are not supported by the claimant's medical record as a whole and are contradicted by Dr. Quinn's own findings and records."  Specifically, the ALJ indicated that Dr. Quinn's assigned GAF score of 54 contradicted his opinion that plaintiff met a disability listing.  (Dkt. 11-2, Pg ID 64).  As discussed below, the undersigned concludes that the ALJ's own selective interpretation of plaintiff's GAF scores does not constitute sufficient evidence to overcome the deference owed to Dr. Quinn's opinion.

"Global Assessment of Functioning represents the examiner's judgment of the individual's overall level of psychological functioning."  *Doud v. Comm'r of Soc. Sec.*, 314 F. Supp. 2d 671, 674 n.2 (E.D. Mich. 2003) (quoting American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32 (4th

ed. 2000)).  The GAF score is a subjective determination that represents the clinician's judgment of the individual's overall level of functioning.  It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death).  A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning.  *White v. Comm'r of Soc. Sec*., 572 F.3d 272, 276 (6th Cir. 2009).  "A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning."  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 502 n.7 (6th Cir. 2006).  Moreover, GAF assessments are "isolated to a relatively brief period of time, rather than being significantly probative of a person's ability to perform mental work activities on a full-time basis."  *White v. Colvin*, 2014 WL 2813310, at *10 (S.D. Ohio, June 23, 2014 ), *adopted by* 2014 WL 3510298 (S.D. Ohio July 14, 2014).

Contrary to the Commissioner's suggestion, courts in this district do not accord controlling weight to GAF scores.  *Bryce v. Comm'r of Soc. Sec.*, 2014 WL 1328277 *9 (E.D. Mich. 2014).  In fact, the Sixth Circuit has held that an ALJ's failure to refer to a GAF score does not make his or her RFC analysis unreliable.

*Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate."); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009) (noting that a GAF score is a subjective determination); *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 511 (6th Cir. 2006) (concluding that low GAF scores failed to show that the ALJ's decision was not supported by substantial evidence, because, in part, the court was not "aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place").

Of particular importance here, courts in this Circuit have concluded that an ALJ errs when he or she disregards the opinion of a treating psychiatrist and instead relies on his or her own interpretation of a plaintiff's GAF score(s). *Martin v. Comm'r of Soc. Sec.*, 61 Fed. Appx. 191, 201 (6th Cir. 2003); *Vock v. Comm'r of Soc. Sec.*, No. 13-12753, 2014 WL 4206885, *17 (E.D. Mich. Aug. 22, 2014). The *Martin* Court specifically noted that no physician or medical expert of record indicated that GAF scores, by themselves, provided a sound basis for diagnosis. Further, the Sixth Circuit found that claimant's treating psychiatrist based his opinion on a variety of factors, only one of which was the GAF scoring. Finally, no medical expert opined that the GAF scores provided a basis for

21

discrediting the opinion of the treating physician.

The Commissioner cites two cases for the proposition that it is appropriate for an ALJ to discount a treating psychiatrist's opinion where, as here, such an opinion is inconsistent with the plaintiff's assigned GAF scores. However, both opinions are inapposite. First, in *Curler v. Comm'r v. Soc. Sec.*, No. 13-1721, 561 Fed. Appx. 464 (6th Cir. 2014), the Sixth Circuit supported a rejection of a claimant's treating psychiatrist, but only after the Court noted that the psychiatrist's notes were inconsistent with other substantial evidence in the record. Specifically, the Court said that the ALJ did not err in discounting the treating psychiatrist's opinion because he analyzed evidence that several therapists and doctors documented that the claimant exhibited at most only "mild or moderate" mental impairments in certain limited areas of functioning, assigned GAF scores above 50, and found no incidents of decompensation. *Id.* at 472. Similarly, in *Gribbins v. Comm'r of Soc. Sec.*, No. 01-5752, 37 Fed. Appx. 777 (6th Cir. 2002), the Sixth Circuit concluded that an ALJ properly discounted the opinion of a treating psychiatrist because it was contradicted by other substantial medical evidence, including another treating physician's GAF score, and evidence of relief that the claimant had obtained from an anti-anxiety medication, which was unknown to the treating psychiatrist at the time of the opinion. *Id.* at 779.

Contrary to the ALJs in *Curler* and *Gribbins*, the ALJ here did not identify

substantial medical evidence that contradicted Dr. Quinn's opinion. Rather, the only two pieces of evidence identified to contradict Dr. Quinn's opinion were plaintiff's GAF score, which the ALJ alleged did not comport with Dr. Quinn's functional capacity assessment and the suggestion that there was no evidence in the record for Dr. Quinn's conclusion that plaintiff required a highly supportive living arrangement. (Dkt. 11-2, Pg ID 64, 352). The undesigned has addressed the ALJ's mistreatment of plaintiff's GAF score above.

With respect to Dr. Quinn's opinion that plaintiff required a highly supportive living arrangement, Dr. Quinn noted that plaintiff has a medically documented history of affective disorder that has lasted for at least two years and has caused more than a minimal limitation of ability to do any basic work activity, with symptoms or signs currently attenuated by medication or psychological support, and a "current history of 1 or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement." (Dkt. 11-7, Pg ID 396). Dr. Quinn's opinion that plaintiff's "anxiety prevents her from leaving home often" coupled with the fact that plaintiff lives with her mother supports his conclusion under Listing 12.00(F). The Commissioner does not appear to dispute this evidence.

As to the remaining justifications offered by the Commissioner in support of her argument that the ALJ properly evaluated Dr. Quinn's opinions, the

23

undersigned notes that "the courts may not accept appellate counsel's post hoc rationalizations for agency action.  It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself."  *Berryhill v. Shalala*, 4 F.3d 993, 1993 WL 361792, at *6 (6th Cir. Sept. 16, 1993) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50, 103 (1983)).  "Courts are not at liberty to speculate on the basis of an administrative agency's order.... The court is not free to accept 'appellate counsel's post hoc rationalization for agency action in lieu of reasons and findings enunciated by the Board.'"  *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991).  Thus, the Commissioner's post hoc rationalizations are not an acceptable substitute for the ALJ's lack of rationale concerning his treatment of the opinions of plaintiff's treating psychiatrist.

Although the ALJ's finding that plaintiff was not disabled ultimately may be justified, if an ALJ fails to explain why he rejected or discounted the opinions of the claimant's treating physician, and how those reasons affected the weight accorded the opinions, the Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) (citation omitted); *see also Cole*, 661 F.3d at 939.  This matter should be remanded for the

ALJ to further explain the weight given to Dr. Quinn's opinion.[2]

2.   *Other Medical Opinions*

Relatedly, plaintiff also claims that the ALJ impermissibly based his opinion almost exclusively on the opinion of state agency non-examining, psychological consultant Dr. Thomas Horner who, contrary to the ALJ's decision, found that plaintiff was incapable of functioning in the workplace.

An ALJ is required to evaluate every medical opinion of record, and set forth a valid basis for rejecting any.  20 C.F.R. § 404.1527; *see Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  The Commissioner may not disregard opinions of a consulting physician which are favorable to a claimant.  *See Lashley v. Sec'y*, 708 F.2d 1048, 1054 (6th Cir. 1983).  Moreover, "in weighing medical evidence, 'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Allen v. Comm'r of Soc. Sec.*, 2013 WL 5676254, at *15 (E.D. Mich. Sept. 13, 2013) (citing *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009)).  An ALJ may not substitute his [or her] own medical judgment for that of a treating or examining doctor where the

---

[2]  To the extent that Dr. Quinn's treatment notes are "illegible," (Dkt.. 11-2, Pg ID 63) it is the responsibility of the ALJ to contact Dr. Quinn to have those notes clarified on remand.  *See* Social Security Ruling (SSR) 96-5p, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, 61 FR 34471-01 (Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.).

opinion of that doctor is supported by the medical evidence. *See Simpson*, 344 Fed. Appx. at 194; *see also Bledsoe v. Comm'r of Social Sec.*, 2011 WL 549861, at *7 (S.D. Ohio 2011) ("An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings."). This is so even though the final responsibility for the RFC determination is an issue reserved to the Commissioner. *Allen*, 2013 WL 5676254, at *15. Further, an ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," discuss "why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence," "consider and address medical source opinions," and "[i]f the RFC assessment conflicts with an opinion from a medical source, ... explain why the opinion was not adopted." SSR 96-8p.

While the ALJ here gave Dr. Horner's opinion "significant weight," the undersigned concludes that the ALJ failed to offer an explanation as required by 96-8p regarding Dr. Horner's opinion that plaintiff's ability to withstand or otherwise cope with the stresses of ordinary or customary occupational activity was impaired, and was likely to remain so indefinitely. (Dkt. 11-2, Pg ID 64, 371). The ALJ gave significant weight to Dr. Horner's opinion, yet this portion of the opinion that was favorable to plaintiff and which supports a finding of

26

disability, was not explained by the ALJ.  This is error.

Moreover, the ALJ indicated that he gave "partial weight" to state agency psychological consultant Dr. Ruqiya Tareen's opinions because those opinions did not take into account the full effect of plaintiff's depression and anxiety on her social functioning as suggested by Dr. Horner.  (Dkt. 11-2, Pg ID 64-65).  As noted by plaintiff, however, Dr. Tareen did not have the benefit of reviewing the notes of plaintiff's treating psychiatrist when rendering her opinions.  As concluded in *Blakley v. Comm'r v. Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009), the decision to accord greater weight to state agency physicians over a claimant's treating sources is not, by itself, reversible error.  "In appropriate circumstances, opinions from State agency medical ... consultants ... may be entitled to greater weight than the opinions of treating or examining sources."   Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996).  The Court provided that one such circumstance may occur, for example, when the "State agency medical ... consultant's opinion is based on a review of a complete case record that ... provides more detailed and comprehensive information than what was available to the individual's treating source." *Id.*   Here, however, the agency's non-examining source did not have an opportunity to review any of Dr. Quinn's opinions.  And, because there was no "indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not 'based on a review of a

complete case record," it would be improper for the ALJ to base his decision on Dr. Tareen's opinions.

Given the above conclusions, the undersigned concludes that the ALJ must re-assess the weight given to all of the medical opinions in the record and re-evaluate plaintiff's RFC finding.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and this matter be **REMANDED** for further proceedings consistent with this Report and Recommendation under Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

28

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2); E.D. Mich. Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 19, 2016                     s/Stephanie Dawkins Davis
                                          Stephanie Dawkins Davis
                                          United States Magistrate Judge


## CERTIFICATE OF SERVICE

I certify that on <u>August 19, 2016,</u> I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                     s/Tammy Hallwood
                     Case Manager
                     (810) 341-7887
                     tammy_hallwood@mied.uscourts.gov